IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

BECKLEY APPALACHIAN REGIONAL HEALTHCARE,
**Employer Below, Petitioner**

**FILED
December 15, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-298**          (JCN: 2021010291)

**BARRY A. LEVIN,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Beckley Appalachian Regional Healthcare ("BARH") appeals the June 13, 2023, order of the West Virginia Workers' Compensation Board of Review ("Board"). Respondent Barry Levin filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the Board erred in reversing the claim administrator's September 21, 2021, order which granted no permanent partial disability ("PPD") benefits, and instead granting a 20% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the lower tribunal's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Respondent, Dr. Levin, is an orthopedic surgeon for BARH who was exposed to COVID-19 while treating patients there in 2020.[2] He stopped working when he was hospitalized on July 31, 2020, with COVID-related pneumonia with acute respiratory failure. He was placed on a ventilator for more than a week, was hospitalized for three weeks, underwent plasma infusions, and was diagnosed with chronic diastolic congestive heart failure and related hypotension, tachycardia with new-onset atrial fibrillation, severe

---

[1] Petitioner is represented by Charity K. Lawrence, Esq. Respondent is represented by Lori J. Withrow, Esq., and Reginald D. Henry, Esq.

[2] As we stated in footnote 2 of *Beckley Appalachian Regional Healthcare v. Levin,* 2022 WL 17168092 (W. Va. Ct. App. 2022), "BARH and the claim administrator did not dispute that Dr. Levin contracted Covid-19 in the course of, and as a result of, his employment" at BARH in 2020.

weakness, muscle atrophy, poor endurance, uncontrolled anxiety, insomnia, chronic pain, intermittent confusion, and new onset of dyspnea and hypoxia, among other things.

Dr. Levin was discharged to a rehabilitation facility on August 20, 2020, where he remained until September 8, 2020, when he was released to his home. On January 14, 2021, his claim was held compensable for "Covid-19, Virus Identified Is Assigned to a Disease Diagnosis of Covid-19 Confirmed by Laboratory Testing."

On September 17, 2021, Dr. Levin underwent an independent medical examination ("IME") by Joseph Grady, M.D., who noted that Dr. Levin's original course of COVID-19 was chiefly respiratory, and to a lesser degree, cardiac, and that both had improved. At the time of the IME, Dr. Levin's chief complaint involved his lower extremities, including weakness and fatigue while standing and walking. Dr. Grady noted that Dr. Levin's medical records revealed a history of peripheral vascular disease, specifically chronic venous insufficiency with stasis dermatitis. He noted that Dr. Levin's fatigue could be reasonably associated with COVID-19 infection as "long Covid" but felt that it may be "superimposed" upon the known peripheral vascular disease. Dr. Grady opined that Dr. Levin no longer had an active COVID-19 infection and found him to be at maximum medical improvement ("MMI"). Dr. Grady found 0% whole person impairment ("WPI") because he determined that there are no specific ratable criteria for COVID-19 in the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993) ("*Guides*"), or for what he described as Dr. Levin's sole remaining symptom, fatigue. Accordingly, on September 21, 2021, the claim administrator issued an order awarding no PPD.

Dr. Levin protested the September 21, 2021, order, and submitted a June 28, 2022, report from Robert B. Walker, M.D., who noted that Dr. Levin had been diagnosed with heart failure, coronary artery disease, thrombocytopenia, and bilateral pneumonia. Dr. Walker noted that these conditions all resolved over time, and Dr. Levin's upper extremity strength improved significantly, but his grip strength had remained weaker, and he had decreased dexterity. Dr. Levin reported his primary remaining impairment was severe, persistent weakness in his lower extremities, mainly in his hips and knees. Dr. Levin disclosed his preexisting venous insufficiency in his lower extremities with swelling and that he had previously undergone bilateral stenting of the venous system in his groin area.

Dr. Walker opined that Dr. Levin suffered from Care Unit Acquired Weakness, which he said was suspected in up to 65% of COVID-19 survivors who were in the ICU and on mechanical ventilation with chemical suppression and muscle paralysis. Most of those patients experienced gait disorders of long duration. Using the *Guides*, Dr. Walker found a 21% WPI for the right lower extremity and a 21% WPI for the left lower extremity, for a total of 38% WPI. Recognizing the preexisting conditions that might have decreased his motor strength, such as peripheral vascular disease, though also finding those to be

improved, Dr. Walker apportioned 18% of the impairment, resulting in a 20% WPI attributable to the compensable COVID-19 condition.

Dr. Levin underwent another IME by Bruce A. Guberman, M.D., on September 7, 2022. Dr. Levin told Dr. Guberman that he has significant weakness in both legs and that he has trouble rising to a standing position and maintaining his balance. He said that prior to his COVID-19 infection, he had edema in both legs, but could perform all duties as an orthopedic surgeon, including standing for long periods of time. Dr. Levin said his edema was much more severe since having COVID-19 and that he had constant ulcers on his legs post-COVID, which were also larger than previously.

Dr. Guberman diagnosed residual muscle weakness in both legs due to post-COVID phenomenon and prolonged ICU and ventilation treatment, as well as permanent aggravation of preexisting chronic venous insufficiency. Using the *Guides*, Dr. Guberman found a 22% WPI for the right lower extremity and a 22% WPI for the left lower extremity, and another 12% WPI for significant chronic venous insufficiency that was worsened by COVID-19, for a total of 46% WPI.

Dr. Levin was seen by Marsha L. Bailey, M.D., for another IME on September 13, 2022. Dr. Bailey said Dr. Levin's most persistent complaint was his persistent non-healing left lower leg ulcer, which had been present since before his COVID-19 infection and which he thought was worse after COVID. She said his second complaint was weakness throughout his core and lower extremities, but that he was not interested in physical therapy because he was "doing it on his own." Under the *Guides*, Dr. Bailey found a 0% WPI for the chronic ulcer on his leg, which was preexisting and unrelated to COVID-19. For the second complaint of core and lower extremity weakness, Dr. Bailey found that the Manual Muscle Testing Model used by Dr. Walker and Dr. Guberman was not valid because page 76 of the *Guides* states that "patients whose performance is inhibited by pain or the fear of pain are not good candidates for manual muscle testing" and Dr. Levin told her that the pain from his chronic lower leg ulcer inhibited his movements in that area of his leg. She further found that Dr. Levin did not qualify for any impairment rating under any of the thirteen models in the lower extremity section of the *Guides* because she believed that each model was confounded by his preexisting conditions. However, Dr. Bailey agreed that Dr. Levin might have some lingering symptoms from his life-threatening COVID-19 infection. She recommended a 3% WPI for his lingering complaints of weakness and fatiguability using the "Adjustments for the Effects of Treatment or Lack of Treatment" section on page 9 of the *Guides*.

Upon its review, the Board found that Dr. Grady's report was unreliable because his evaluation occurred when Dr. Levin was not yet at MMI. The Board considered Dr. Bailey's criticisms of Dr. Walker and Dr. Guberman for using manual muscle testing despite her belief that Dr. Levin's performance would be inhibited by painful ulcerations, but noted that neither Dr. Walker nor Dr. Guberman reported that Dr. Levin's performance

was inhibited by pain or the fear of pain. Therefore, the Board did not find that Dr. Bailey's criticism on these grounds was well-founded.

The Board also noted that Dr. Walker and Dr. Guberman found identical grades of weakness in the hip, knee, and ankle of both lower extremities. The difference between the two was that Dr. Guberman found impairment for hip adduction weakness and an additional 12% WPI for worsening of his chronic venous insufficiency. The Board noted that Dr. Guberman was the only physician who found these additional impairments and that they were not supported by the record and were therefore unpersuasive.

The Board similarly found Dr. Bailey's finding of a 3% WPI based on Table 9 of the *Guides* to be unpersuasive, noting that no other physician found it appropriate to use the "Adjustments for the Effects of Treatment or Lack of Treatment" section on page 9 of the *Guides*. The Board found that Dr. Bailey's methodology was not supported by the other evidence of record.

Finally, the Board found that all four of the physicians noted that Dr. Levin has preexisting symptomatic conditions that affected or were affected by his compensable COVID-19 infection, and so apportionment was appropriate. Therefore, the Board found that Dr. Walker's report was the most persuasive because it found impairment for the compensable claim, the process Dr. Walker used to determine the impairment was confirmed by another physician, and he properly apportioned for preexisting conditions. Accordingly, in its order, the Board determined that Dr. Levin has a 20% WPI based on Dr. Walker's report and reversed the claim administrator's order that granted no PPD benefits based on Dr. Grady's September 17, 2021, report. It is from that order that BARH now appeals.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-12a(b) (2022), as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, BARH argues that the claim administrator was correct to award no PPD benefits, or at most should have awarded 3% WPI as recommended by Dr. Bailey, because Dr. Levin has no ratable WPI related to his compensable condition as there are no specific ratable criteria for COVID-19 in the *Guides*. BARH also argues that Dr. Levin's continuing symptoms are related to his preexisting conditions and Dr. Walker did not properly account for those conditions because he did not use the same methodology as Dr. Bailey, who found a 3% WPI.

Upon review, we find no merit in BARH's arguments or error in the Board's analysis or conclusions. The Board acknowledged that Dr. Grady's report must be excluded because it was completed prior to Dr. Levin reaching MMI. As Dr. Grady's report was the sole basis for the claim administrator's September 21, 2021, order, awarding no PPD benefits, the Board appropriately reversed the order. Furthermore, the Board's order clearly states its rationale for finding the criticisms lodged by Dr. Bailey, as well as the methodology she employed, to be unpersuasive. The Board also explained why it found the report of Dr. Walker to be the most persuasive, including the methodology he used to assess Dr. Levin's impairment and that he appropriately apportioned the impairment rating for preexisting conditions, which no other physician did. As its order notes, the Board must weigh and consider "[a]ll reliable, probative, and substantial evidence" in determining the correct PPD award, but is not required to accept the recommended percentage of any particular expert. BARH has produced no evidence to suggest that the Board erred in discharging this duty, and we find nothing here that would warrant disturbing the Board's determination.

Finding no error in the Board's June 13, 2023, order, we affirm.

Affirmed.

**ISSUED:** December 15, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen